**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 16-30049** |
| | ) | |
| **DONALD DOROSHEFF,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on Defendant Donald Dorosheff's Motion to Exclude Evidence (d/e 57).  Because the good faith exception to the exclusionary rule applies to the warrant at issue, the motion is DENIED.

### I. BACKGROUND

Defendant's Motion to Exclude Evidence concerns two warrants: one issued on February 20, 2015, in the Eastern District of Virginia (the "NIT warrant"), and the other issued on March 1, 2016, in this district (the "residence warrant").  Defendant seeks to suppress any evidence derived from the NIT warrant as well as evidence obtained from subsequent searches as "fruit of the

poisonous tree." Mem. Supp. Mot. to Exclude 8 (d/e 58) (quoting

Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016)).  Defendant argues:

(1) the NIT warrant violated a substantive provision of Federal Rule

of Criminal Procedure 41(b); and (2) the good-faith exception does

not apply because Department of Justice (DOJ) and Federal Bureau

of Investigation (FBI) officials were aware of the Rule 41(b) violation

when FBI agents obtained and executed the NIT warrant.

The charges in this case arise from an investigation of a

website called Playpen, a global online forum through which

registered users distributed and accessed child pornography. Resp.

to Mot. to Suppress Evid. 2 (d/e 18).  This investigation was known

as Operation Pacifier.  Playpen operated on the Tor network which

allows users to maintain anonymity by masking the user's actual

Internet Protocol (IP) address by bouncing user communications

around a network of relay computers called nodes. Id. at 3.

In January 2015, the FBI seized the Playpen website and

allowed it to continue to operate at a government facility in the

Eastern District of Virginia from February 20, 2015, through March

4, 2015.  Id. at 5.  FBI agents obtained the NIT warrant from the

Eastern District of Virginia to monitor the site users'

communications and to deploy a Network Investigative Technique (NIT) on the site in order to attempt to identify registered users.  Id.

Using the NIT, the FBI identified an IP address associated with Playpen user "Grite" and traced it to Defendant.  Id. at 6.  On March 1, 2016, Magistrate Judge Schanzle-Haskins issued the residence warrant to FBI Special Agent David Harmon.  Id.  The residence warrant authorized law enforcement to search the home of Donald Dorosheff and to seize computers and other electronic storage media as well as records and information relating to child pornography offenses.

On March 3, 2016, agents executed the residence warrant at Defendant's home.  Id.  The search yielded 1,114 images and 1 video of confirmed child pornography.  Id.  On October 5, 2016, a four-count indictment was filed against Defendant, charging him with two counts of Receiving Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) and two counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (d/e 1).  The indictment also included a forfeiture claim against Defendant for two laptops, five flash drives, and one media card.  Id. at 5.

Defendant subsequently filed a Motion to Suppress Evidence arguing that both warrants lacked probable cause and that the good-faith exception was inapplicable because the residence warrant was based on stale information (d/e 21).  This Court denied the Motion to Suppress Evidence, finding that neither warrant lacked probable cause.  Opinion and Order (d/e 26).  The Court also found that the NIT warrant violated Rule 41(b), but that suppression was not warranted because the executing officers acted in good-faith reliance on the validity of the NIT warrant.  Id. at 15–20.

Defendant then filed a Motion for Reconsideration (d/e 28) of the Court's Order denying his motion to suppress.  The Court denied Defendant's Motion for Reconsideration, finding that the motion raised no new issues and, instead, addressed previous arguments that the Court had already rejected (d/e 34).

Defendant's attorney, Michael J. Costello, then filed a Motion to Withdraw as Counsel of Record (d/e 35).  The Court granted the motion as well as Defendant's request for substitution, appointing the Federal Public Defender's office for the Central District of Illinois to represent Defendant in all further proceedings in this matter.

Shortly thereafter, Assistant Federal Public Defender Johanes Maliza filed a Motion to Withdraw as Counsel (d/e 41) and Defendant requested substitution of an attorney. The Court granted the motion and appointed CJA attorney Howard Feldman as counsel. Defendant, by his new counsel, then filed a Motion to Exclude Evidence (d/e 57) which the Court now addresses. Although the Motion to Exclude Evidence is perhaps properly construed as a second successive motion for reconsideration of the Court's prior Order denying Defendant's Motion to Suppress Evidence—in which case the Court would deny the Motion to Exclude Evidence as not meeting the standard for reconsideration as it raises the same issues the Court previously decided—the Court will conduct a full analysis of the Motion in light of the new evidence presented.

In support of this Motion, Defendant has attached a number of exhibits containing previously unknown information, purporting to show that (1) prior to the investigation, DOJ officials were aware that Rule 41(b) precluded a nationwide remote-access search warrant; (2) the DOJ was actively involved in amending Rule 41 to allow such a warrant; and (3) officials at the highest level of the

DOJ were involved in the Playpen investigation and made the decision to obtain the NIT warrant.  Mot. to Exclude Evid. Ex. A-I (d/e 57).  Defendant argues that this information shows that the DOJ acted in bad faith in authorizing law enforcement officials to seek and obtain a warrant which the DOJ knew to be illegal.

The Court held a hearing on Defendant's Motion to Exclude Evidence at which Defendant presented the attached exhibits to the Court.  After hearing the parties' arguments, the Court reserved ruling on the Motion to permit further discovery on the issue of good faith.  The Court later entered a Text Order directing the parties to brief the issue of knowledge or should-have knowledge of the Assistant U.S. Attorney and FBI agent who applied for the NIT warrant and that of their superiors and other officers or agents of DOJ and FBI regarding the discussions of amendments to Rule 41 and the case of In re Warrant to Search a Target Computer at Premises Unknown, 958 F. Supp. 2d 753 (S.D. Tex. 2013).

Defendant then filed a Motion to Compel Discovery, (d/e 67), asking the Court to direct the Government to respond to a discovery request seeking materials "directly relating to the issue of the Government's simultaneous pursuit of amendments to Rule 41 of

the Federal Rules of Criminal Procedure and Operation Pacifier."
Mot. to Compel Ex. A 1 (d/e 67-1).  The Government has filed its
response to the Motion to Compel (d/e 68) asserting that some
responsive documents were already in Defendant's possession, but
that any "internal documents subject to attorney-client privilege,
the deliberative process privilege, or otherwise not subject to
disclosure under Rule 16 of the Federal Rules of Criminal
Procedure" would not be provided.  Resp. to Mot. to Compel 2.  After
requesting and receiving an extension of time to do so, the parties
filed the supplemental briefs requested by the Court.

Also pending is a Motion in Limine to Exclude Evidence of
Other Crimes (d/e 13) filed by Attorney Costello prior to his
withdrawal.  In the Motion in Limine, Defendant seeks to bar
pornographic material seized during the execution of the warrants
from being introduced at trial under Federal Rule of Evidence
404(b).  The Motion in Limine was later adopted by Attorney Maliza
before he also withdrew from the representation.  See Notice of
Adoption of Pending Motion, d/e 39.  The Court denies the Motion
in Limine to Exclude Evidence of Other Crimes without prejudice to
Defendant reraising the issue in a pretrial motion if appropriate.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is a violation of the Fourth Amendment for a police officer to search a defendant's residence without a valid warrant. However, the exclusionary rule precludes admission of evidence obtained as a result of unlawful searches and seizures. United States v. Calandra, 414 U.S. 338, 347 (1974). The purpose of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." Id.

The Supreme Court has established a good-faith exception to the exclusionary rule that precludes suppression of evidence when law enforcement acts in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. United States v. Leon, 468 U.S. 897, 922 (1984). The exception supports the public's interest in admitting all relevant and reliable evidence and the policy of deterring police misconduct. Nix v. Williams, 467 U.S. 431, 443 (1984).

### III. ANALYSIS

At the time Defendant filed his Motion to Exclude Evidence, five circuits had concluded that the good-faith exception applies to the very same NIT warrant at issue here.  See United States v. Werdene, 883 F.3d 204, 217–19 (3d Cir. 2018); United States v. McLamb, 880 F.3d 685, 689–90 (4th Cir. 2018); United States v. Levin, 874 F.3d 316, 324 (1st Cir. 2017); United States v. Horton, 863 F.3d 1041, 1052 (8th Cir. 2017); United States v. Workman, 863 F.3d 1313, 1321 (10th Cir. 2017).  Defendant acknowledges the volume of this authority—albeit at the time merely persuasive to this Court—but suggests that none of these reviewing courts had the full benefit of the materials provided in this case regarding the DOJ's conduct.  See Mem. Supp. Mot. to Exclude 5; Def.'s Suppl. Br. Supp. Mot. to Exclude 9.  Defendant urges this Court to consider the full scope of the information provided to the Court and to reach a different conclusion.

Since Defendant filed his Motion to Exclude Evidence, the Seventh Circuit has twice affirmed the validity of the same NIT warrant at issue in this case, finding that the good-faith exception applies.  First, in three consolidated appeals, the Seventh Circuit

held that even if the digital searches violated the Fourth

Amendment, the good-faith exception to the exclusionary rule still

applies.  United States v. Kienast, 907 F.3d 522, 525 (7th Cir.

2018).[1]  Then in United States v. Grisanti, 943 F.3d 1044 (7th Cir.

2019), the Seventh Circuit reaffirmed its holding in Kienast that the

good-faith exception to the exclusionary rule applies to the NIT

warrant after considering arguments by the defendant largely

identical to those presented by Defendant here.  See id. at 1049

(rejecting defendant's argument that the "good-faith exception

should be deemed categorically inapplicable to warrants that are

issued 'without jurisdiction'" and thus void ab initio as incompatible

with the Supreme Court's decision in Herring v. United States, 555

U.S. 135 (2009)).  Additionally, five other circuits have since

reached a similar conclusion, holding the good-faith exception

---

[1] Although the Seventh Circuit's opinion mentions the 2016 amendment to Rule 41 only in a footnote, having reviewed the briefs in those cases, this Court is convinced that the Seventh Circuit had before it, most if not all, of the additional materials that have been provided in this case.  See, e.g., Brief for Appellant at 35, United States v. Broy, No. 17-2439 (citing April 7–8, 2014 agenda materials of the Advisory Committee on Criminal Rules); Brief for Appellant at 21, United States v. Owens, No. 17-1989 (citing the September 18, 2013 Raman letter); Reply of Appellant at 10, United States v. Owens, No. 17-1989 (citing April 7–8, 2014 minutes of the Advisory Committee on Criminal Rules); Brief for Appellant at 52–54, United States v. Kienast, No. 17-1840 (citing testimony of Agent Alfin).

applies to the NIT warrant implicated in this case.  See United States v. Eldred, 933 F.3d 110 (2d Cir. 2019); United States v. Ganzer, 922 F.3d 579 (5th Cir. 2019); United States v. Moorehead, 912 F.3d 963 (6th Cir. 2019); United States v. Taylor, 935 F.3d 1279 (11th Cir. 2019); United States v. Henderson, 906 F.3d 1109 (9th Cir. 2018).  The Court sees no reason to diverge in this case from the Seventh's Circuit's holdings in Kienast and Grisanti but will nonethteless conduct the full analysis of Defendant's Motion below as guided by the relevant precedent.

### A. The NIT Warrant Violated Federal Rule of Criminal Procedure 41(b) Because the NIT Warrant Exceeded the Scope of Authority Granted to the Magistrate Judge in Rule 41(b).

This Court has previously held that the NIT warrant violated a substantive provision of Federal Rule of Criminal Procedure 41(b), which outlines a magistrate judge's authority to issue a warrant. See Opinion and Order 16-18(d/e 26).

District courts across the country have considered the validity of the NIT warrant. The majority of courts that have ruled on this issue have found that the NIT warrant violated Rule 41(b).  See, e.g., United States v. Croghan, 209 F. Supp. 3d 1080, 1086 (S.D.

Iowa 2016), *rev'd sub nom.* <u>United States v. Horton</u>, 863 F.3d 1041 (8th Cir. 2017). However, several courts have held that the NIT warrant was authorized by Rule 41(b)(4), which authorizes a magistrate to issue a warrant to install a device to track the movement of a person or property. <u>See, e.g.</u>, <u>United States v. Darby</u>, 190 F. Supp. 3d 520 (E.D. Va. 2016).

Rule 41(b)(4) states "a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both." The definition of "tracking device," for the purposes of Rule 41, is "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117.

Here, the NIT program did not track the movement of any person or object. Rather, the NIT downloaded instructions onto a Playpen user's computer. These instructions caused the computer to transmit identifying information back to a government-controlled computer in Virginia. The information collected included the computer's IP address and Media Access Control (MAC) address.

Resp. to Mot. to Suppress Evid. 11.  Because the NIT program initiated a search of computer data and does not track movement, Rule 41(b)(4) does not apply.

Therefore, none of the authorities granted to the magistrate judge in Rule 41(b) authorized the issuance of the NIT warrant. Nonetheless, as the Seventh Circuit held in <u>Kienast</u>, 907 F.3d at 528, and reaffirmed in <u>Grisanti</u>, "[e]ven if the magistrate judge lacked jurisdiction or some other degree of authority to issue a warrant that reached beyond the Eastern District of Virginia, [the Court] must consider whether the good-faith exception applies." <u>Grisanti</u>, 943 F.3d at 1049.

## B. Suppression is not Warranted Because the Good-Faith Exception Applies.

This Court previously held that the good-faith exception to the exclusionary rule applies to prevent the suppression of evidence obtained pursuant to the NIT warrant.  Opinion and Order 18-21 (d/e 26).  Defendant argues that suppression is warranted because the DOJ was objectively unreasonable in authorizing its agents to obtain a warrant that violated Rule 41(b).

In support of this argument, Defendant has attached multiple exhibits relating to the process of amending Rule 41(b).  In these documents, high-ranking DOJ officials demonstrate their understanding that Rule 41(b) did not, at the time, allow a magistrate to issue a warrant to remotely search digital storage on computers in unknown locations outside of the issuing district.

On September 18, 2013, Acting Assistant Attorney General (AAAG) Mythili Raman wrote a letter to Judge Reena Raggi, Circuit Judge of the Court of Appeals for the Second Circuit and Chair of the Federal Judicial Conference Advisory Committee on Criminal Rules.  Mot. to Exclude Evid. Ex. B (d/e 57-2).  In the letter, AAAG Raman, on behalf of the DOJ, recommended an amendment to Rule 41 which would allow for remote-access searches of computers in unknown locations.  Id.  The letter acknowledged the need to update Rule 41 and referenced the case of In re Warrant to Search a Target Computer at Premises Unknown, 958 F. Supp. 2d 753 (S.D. Tex. 2013), in which a magistrate judge refused to authorize a warrant for a remote search of an unknown computer.  Mot. to Exclude Evid. Ex. B 2 (d/e 57-2).

Based on agenda materials of the Advisory Committee on Criminal Rules, Jonathan Wroblewski, Director of the Department of Justice Office of Policy and Legislation represented the DOJ on the Rule 41 Subcommittee.  Mot. to Exclude Evid. Ex. C 155 (d/e 57-3).  David Bitkower, then Deputy Assistant Attorney General for the Criminal Division, also represented the DOJ at a Committee meeting and discussed the need for an amendment to allow for a warrant to search a computer whose location is unknown because of anonymizing technology.  Mot. to Exclude Evid. Ex. G 6-7 (d/e 57-7).

Defendant points to a transcript of testimony from FBI Special Agent Daniel Alfin from a separate case stemming from the Operation Pacifier investigation to show top-level DOJ involvement in the investigation of Playpen.  Mot. to Exclude Evid. Ex. I (d/e 57-9) (transcript of testimony of Agent Alfin at motion hearing before Chief District Judge Patti Saris in United States v. Anzalone, Crim. No. 15-10347, D. Mass., Oct. 14, 2016).  Throughout his testimony, Agent Alfin responded to multiple questions about which government organizations and individuals were involved in major decisions in the investigation.  Agent Alfin indicated that the

deliberative process went far beyond discussions between him and Special Agent Douglas Macfarlane, the affiant on the warrant application.  In addition to Assistant U.S. Attorney Whitney Dougherty Russell, whose name appears on the warrant application, Agent Alfin indicated that the investigation "was done with the approval of executives in both the FBI and the [DOJ]." <u>Id.</u> at 46:1–3.  Agent Alfin specifically identified the DOJ Child Exploitation and Obscenity Section (CEOS), Computer Crime and Intellectual Property Section (CCIPS), and the FBI Office of General Counsel as entities involved in the investigation.  <u>Id</u>. at 43–46.

In light of this previously unknown information, Defendant argues that (1) the Court "should consider the culpability of the DOJ as a whole" in determining whether the good-faith exception applies; and (2) "even if this Court looks to the culpability of individual law enforcement agents, it should consider their knowledge of the illegality of the NIT warrant in the aggregate." Mem. Law Supp. Mot. to Exclude 10 (d/e 58) (Memorandum).

**1. A finding of good faith depends on the objective reasonableness of the FBI agents who obtained and executed the NIT warrant.**

Defendant argues that an analysis of good-faith must consider the conduct of the DOJ as a whole rather than that of the individual agents because DOJ officials were involved in the decision to conduct the operation.  The good-faith exception to the exclusionary rule prevents suppression of evidence obtained in violation of the Fourth Amendment when law enforcement acts in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate.  Leon, 468 U.S. at 922.  Although the good-faith exception most commonly applies to warrants lacking probable cause, the exception may also apply to warrants issued without proper authority.  Kienast, 907 F.3d at 528 (applying good faith exception to the NIT warrant even if the magistrate judge lacked authority to authorize searches of computers across the country); United States v. Master, 614 F.3d 236 (6th Cir. 2010) (good-faith exception applied to a warrant issued by a retired judge).

This Court previously applied the good-faith exception based on the conduct of the FBI agents who executed the warrant. Opinion and Order 20–21.  The Court stated that suppression was

not warranted because "nothing before the Court indicates that the executing officers did not act in good-faith reliance on the validity of the warrant or that they acted culpably or deliberately in violating Rule 41 . . . ." Id. at 20.  Similarly, every court of review to consider this issue thus far has held that the good-faith exception applies to the NIT warrant based on the objective reasonableness of the FBI agents who obtained and executed the NIT warrant.  See, e.g., Grisanti, 943 F. 3d at 1050 (noting that the Seventh Circuit's prior holding in Kienast rejected the defendant's argument "that the good-faith exception should not apply because a well-trained officer would have known that the magistrate judge lacked authority to authorize searches of computers across the country and therefore would have recognized that the NIT warrant was facially invalid"); United States v. Workman, 863 F.3d 1313, 1320 (10th Cir. 2017) ("To apply this exception, we consider whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization." (citing Leon, 468 U.S. at 922 n.23)).

Defendant contends that "the scope of inquiry should extend well beyond these individuals."  Def.'s Suppl. Br. Supp. Mot. to

Exclude 3 (d/e 70).  The Government responds that "the Court can impute knowledge of the [DOJ's] input relating to amending Rule 41 of the Criminal Rules of Procedure and the decision denying the Texas search warrant to the AUSA and FBI agents who obtained the NIT warrant," but that suppression is unwarranted even when this assumption is made because there was no bad faith on the part of the Government.  Gov't Br. and Resp. to Def.'s Mot. to Exclude 3 (d/e 69).

The Court finds that the good-faith analysis turns on the objective reasonableness of the FBI agents who obtained and executed the NIT warrant.  Courts of review have consistently refused to expand the good-faith analysis beyond the culpability of the officers who obtain and execute the warrant.  See, e.g., Massachusetts v. Sheppard, 468 U.S. 981 (1984) (good-faith exception applied when a judge erroneously assured police officers that the warrant authorized a search); see also, Herring v. United States 555 U.S. 135 (2009) (good-faith exception applied where officers reasonably relied on a warrant that was mistakenly listed as outstanding in a neighboring police department's database).

Defendant's Motion specifically names three individuals within the DOJ who Defendant contends demonstrated knowledge of the NIT warrant's illegality.  The relevant "top officials" include an Acting Assistant Attorney General, the Director of the DOJ Office of Policy and Legislation, and the Deputy Assistant Attorney General for the Criminal Division.  Mem. Supp. Mot. to Exclude 7–14.  Yet, Defendant has not identified any case in which a court has evaluated the objective reasonableness of similarly situated high-ranking law enforcement officials for purposes of the good-faith determination.

Furthermore, nothing before the Court definitively indicates that these individuals were involved in the NIT warrant application process.  Defendant points to Agent Alfin's statement that "[i]t was done with the approval of executives in both the FBI and the [DOJ]."  Mot. to Exclude Evid. Ex. I 46:1-3 (d/e 57-9).  However, the transcript is unclear whether Agent Alfin was referring specifically to the decision to obtain the NIT warrant or more generally to the decision to conduct the investigation.  In fact, while Agent Alfin states that "Main Justice" was involved in the investigation, he refrained from mentioning the NIT specifically, and Chief District

Judge Saris for the District of Massachusetts sustained multiple objections to questions about the deliberative process at the DOJ. Id. at 42–46.

To expand the focus of the good-faith analysis based on this evidence would stretch the rule beyond its purpose. None of the individuals who Defendant contends demonstrated knowledge of the NIT warrant's illegality were identified by Agent Alfin as being involved in Operation Pacifier. Furthermore, there is no indication that anyone communicated the conflict with Rule 41 to the executing agents or the AUSA who reviewed the NIT warrant application. These executing agents' conduct is what is relevant to the good faith-exception finding. Therefore, whether the good-faith exception prevents suppression of evidence obtained pursuant to the NIT warrant depends on whether the FBI agents who obtained and executed the NIT warrant reasonably relied on the validity of the warrant.

### 2. The executing officers acted in objectively reasonable reliance on the validity of the NIT warrant.

Defendant asserts that knowledge of the NIT warrant's illegality should be imputed from the DOJ officials to the Assistant

U.S. Attorney or the individual FBI agents who obtained and executed the warrant under the collective knowledge doctrine. Mem. Supp. Mot. to Exclude 11–12 (primarily citing cases concerning probable cause).

The collective knowledge doctrine is rooted in the Supreme Court's decision in United States v. Hensley, 469 U.S. 221 (1985). There, the Court held that an arresting officer was not required to have personal knowledge of the facts creating a reasonable suspicion.  Hensley, 469 U.S. at 227.  Under the collective knowledge doctrine, the knowledge of one law enforcement officer may be imputed to other officers when they work together on an investigation.  United States v. Terry, 400 F.3d 575, 581 (8th Cir. 2005).

Historically, courts have limited the collective knowledge doctrine to the context of imputing one officer's knowledge to another in order to support probable cause or reasonable suspicion. Defendant has not identified any case in which a court has applied the collective knowledge doctrine to a finding of the good-faith exception.  For example, in Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003), the Second Circuit refused to apply the collective

knowledge doctrine to impute bad faith from one officer to another within an investigation.  331 F.3d 63, 74 (2d Cir. 2003).  Common sense dictates this result, the Second Circuit noted: "Certainly, one cannot establish that an officer engaged in conduct undertaken in bad faith simply by presenting evidence of another officer's knowledge or state of mind."  Id. (citation and quotation omitted).

Furthermore, to apply collective knowledge to this Court's good-faith analysis would expand the doctrine beyond its purpose. In Hensley, the Supreme Court based its decision on the need for police to "act promptly in reliance on information from another jurisdiction."  469 U.S. at 231.  The Supreme Court noted that the rule "minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions."  Id.  To impute a high-ranking DOJ official's knowledge of a complex legal issue to individual FBI agents does not serve this policy.  The Seventh Circuit has likewise concluded that "a reasonable [FBI] agent could rely on the NIT warrant as permitting the use of the software and equipment in Virginia to obtain information from computers outside the magistrate judge's district" rejecting the defendant's argument

in that case that the agents unreasonably exceeded the scope of the warrant.  <u>Grisanti</u>, 943 F. 3d at 1050.

Because nothing before the Court indicates that the agents who obtained and executed the NIT warrant did not act in good-faith reliance on the validity of the warrant, the benefit of deterrence is not sufficient to outweigh the costs of suppression. Additionally, the Seventh Circuit has held that "[s]uppressing the evidence from the NIT warrant would be inappropriate because penalizing the officer for the magistrate's arguable error rather than his own 'cannot logically contribute to the deterrence of Fourth Amendment violations,'" which is the purpose underlying the application of the exclusionary rule.  <u>Grisanti</u>, 943 F.3d at 1050 (quoting <u>Kienast</u>, 907 F.3d at 528).  Therefore, the Court finds that the good-faith exception prevents suppression of evidence obtained pursuant to the NIT warrant.

### IV. DEFENDANT'S MOTION TO COMPEL DISCOVERY

Because the Court reaffirms its conclusion that the conduct of the agents who obtained and executed the NIT warrant is what is relevant to the good-faith exception analysis, the Court does not see how the information sought in Defendant's Motion to Compel

Discovery—a broad range of materials from the DOJ and FBI concerning participation in the amendments to Rule 41, the agencies' response to In Re Warrant, and the agencies' conduct of Operation Pacifier—would alter this conclusion.  The Motion to Compel Discovery is therefore denied.  See Kienast, 907 F.3d at 530 (affirming district court's denial of motion to compel review of NIT source code and cross-examination of FBI agent who created affidavit).

## V. CONCLUSION

Having considered all of the materials before it, including the supplemental briefing provided by the parties pursuant to the Court's order, the Court reaffirms its previous finding that the NIT warrant was issued in violation of Rule 41(b).  Despite this violation, the Court finds that suppression of evidence is not warranted because the executing agents acted in good faith.  Defendant's Motion to Exclude Evidence (d/e 57) and Motion to Compel Discovery (d/e 67) are accordingly DENIED.  The Court's prior text order dated January 28, 2019, directing the Government to produce "materials directly relating to the issue of the Government's simultaneous pursuit of amendments to Rule 41 of the Federal

Rules of Criminal Procedure and Operation Pacifier" is VACATED.

The Government's Motion to Clarify (d/e 86) that text order is

DENIED AS MOOT.  Defendant's Motion in Limine to Exclude

Evidence of Other Crimes (d/e 13) is DENIED for the same reasons

stated in this Opinion, with leave to reraise the issue prior to trial.

ENTER: August 23, 2021

FOR THE COURT:

/s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE